UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEYEDALIREZA ROZATI,

Petitioner,

Case No. 1:26-cv-3096

v.

Honorable Jane M. Beckering

ROBERT LYNCH et al.,

Respondents.
______________________________/

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**Discussion**

**I. Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.10–11.)

In an order entered on October 30, 2026, the Court directed Respondents to show cause, within three business days, or fourteen days if Petitioner's detention is governed by 8 U.S.C. § 1231, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed a Notice of 8 U.S.C. § 1231 Detention on October 30, 2026,

(ECF No. 4), and their response on November 12, 2026, (ECF No. 5). Petitioner filed his reply on November 18, 2026.[1] (ECF No. 6).

## II. Relevant Factual Background

Petitioner "is a native and citizen of Iran[.]" (Bakko Decl. ¶ 4, ECF No. 5-1, PageID.52.) Petitioner entered the United States on or about September 5, 2019, on a F-1 nonimmigrant visa, allowing him to remain in the United States for a temporary period not to exceed sixty days beyond the program end date of August 2, 2024. (*Id.*) Petitioner filed a Form I-485, Application to Register Permanent Resident or Adjust Status with the United States Citizenship and Immigration Services (USCIS) on November 26, 2021. (*Id.* at ¶ 5.) Petitioner was encountered and arrested on July 21, 2025. (*Id.* ¶ 6, PageID.53.) On July 30, 2025, USCIS denied Petitioner's Form I-485. (*Id.* ¶ 5, PageID.52.)

On April 17, 2026, an Immigration Judge ordered Petitioner removed to Iran, and Petitioner did not appeal the removal decision. (*Id.* ¶ 8, PageID.53.) Petitioner filed an affirmative notice of waiver of his appeal rights on April 27, 2026. (Pet., ECF No. 1, PageID.2.) On April 24, 2026, ICE confirmed Petitioner's citizenship and advised that a new passport could be issued. (Bakko Decl. ¶ 9, PageID.54.) "On May 20, 2026, all removals to Iran were paused until further notice." (*Id.* ¶ 11.) Officials provided an additional passport for Petitioner on June 3, 2026. (*Id.* at ¶ 13.) ICE held a Post Order Custody Interview with Petitioner on July 24, 2026. (*Id.* at ¶ 14.) "ICE ERO attempted to remove [Petitioner] on a commercial flight scheduled for September 14, 2026.

---

[1] Petitioner also filed a motion requesting that the Court accept his untimely reply, explaining that counsel's filing was delayed due to a family medical emergency. (ECF No. 7.) On November 19, 2026, Petitioner filed a notice indicating that Respondents do not oppose the late filing. (ECF No. 8.) Accordingly, the Court will grant Petitioner's motion (ECF No. 7) and accept his reply (ECF No. 6) as filed.

However, the flight was canceled because Iranian airspace was closed." (*Id.* ¶ 16, PageID.55.) Petitioner was then approved for a Special High Risk Charter (SHRC) flight to Iran, scheduled to depart on November 10, 2026. (*Id.* ¶ 17.) On November 9, 2026, ICE was notified that Iran had rejected Petitioner's removal. (*Id.* ¶ 19.) Respondents' declarant states that Petitioner "will remain in ICE custody pending further guidance regarding his removal to Iran." (*Id.* ¶ 20.)

## III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV. Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Resp., ECF No. 5, PageID.45; Pet., ECF No. 1, PageID.2.) However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.7–11.) In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (*See* Resp., ECF No. 4, PageID.46–48.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney

General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final on April 27, 2026, and the 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

In this case, when Petitioner initiated this action on October 28, 2026, he had been in ICE custody for more than six months following Petitioner's April 27, 2026, final order of removal. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because:

> Iran has a multi-decade track record as a recalcitrant nation unwilling to accept the return of its nationals. Moreover, there exists a state of war between the United States and Iran. These two factors, combined with the actual failure of the respondents to remove [Petitioner], provide this court with good cause to believe that removal is not reasonably foreseeable.

---

[2] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

(Reply, ECF No. 6, PageID.58). In response, Respondents contend that removal attempts have been made and "DHS will continue to work on rescheduling the Petitioner for a future flight." (Resp., ECF No. 5, PageID.48.) Respondents' declarant also states: "[Petitioner] will remain in ICE custody pending further guidance regarding his removal to Iran." (Bakko Decl. ¶ 20, ECF No. 5-1, PageID.55.) However, there is no indication in the record presently before the Court that ICE has received any additional confirmation from Iran regarding Petitioner's removal to Iran.

Under these circumstances, the Court concludes that Petitioner has shown that there is "good reason" to believe that "there is no significant likelihood of removal in the reasonably foreseeable future" because Iran rejected Petitioner and removal efforts appear to have stalled at this time. Because Petitioner has met his burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.* Respondents' sole evidence is that ICE has attempted to remove Petitioner on two prior occasions, and Respondents indicate that they will continue awaiting guidance on removal efforts. However, Iran rejected Petitioner, there is no information in the record before the Court that Respondents have taken any steps regarding effecting removal after Iran's rejection of Petitioner. Therefore, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's § 2241 petition.

## V. Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VI. Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of the United States Secretary of Homeland Security as

a Respondent. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the Detroit ICE Field Office Director and the Secretary for the Department of Homeland Security as Respondents.

## **Conclusion**

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject, as applicable, to an order of supervision, within five days of the date of this opinion and corresponding judgment. The Court will also order Respondents to file a status report within six days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment.

Dated: November 24, 2026

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge